<u>NOT FOR PUBLICATION</u>

## <u>UNITED STATES DISTRICT COURT</u>
## <u>FOR THE DISTRICT OF NEW JERSEY</u>

―――――――――――――――――――――――

:

IN RE GENTA                                          :

                                                     :

SECURITIES LITIGATION                                :

                                                     :          Civil Action No. 04-2123 (JAG)

                                                     :

                                                     :               **OPINION**

―――――――――――――――――――――――:


<u>**Appearances:**</u>

Shalov, Stone, Bonner & Rocco, LLP
By: Patrick Louis Rocco, Esq.
65 Madison Avenue, Suite 333
Morristown, NJ  07960

Milberg, Weiss, Bershad & Schulman, Esqs.
By: Neil Fraser, Esq.
One Pennsylvania Plaza
New York, NY 10119

Attorneys for Plaintiffs


Fox Rothschild, LLP
By: Jack L. Kolpen, Esq.
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648

Davis, Polk & Wardwell
By: Elliot Moskowitz, Esq.
      Amelia T.R. Starr, Esq.
450 Lexington Avenue
New York, NY 10017

Attorneys for Defendants

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the Motion for Final Approval of the Settlement (Docket Entry No. 137) and the Motion By Plaintiffs' Counsel[1] for Award of Attorneys' Fees and Reimbursement of Expenses (Docket Entry No. 138) by Lead Plaintiffs Bal Harbor Financial LLC, William Nasser, Jr., David Smith, Brian R. Nickerson, and Ralph LeMar (collectively, "Lead Plaintiffs").  A Fairness Hearing was held on March 3, 2008 to determine (1) whether, under FED. R. CIV. P. 23(a) and (b), this action satisfies the applicable prerequisites for class action treatment; (2) whether the proposed settlement (the "Settlement"), as set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), is fair, reasonable, and adequate, and should be finally approved by this Court; (3) whether an Order and Final Judgment should be entered, dismissing the Complaint with prejudice, and releasing the Released Parties from any liability for the Settled Claims[2]; (4) whether the proposed plan of allocation of the Settlement proceeds ("Plan of Allocation") is fair and reasonable and should be approved by this Court; (5) whether the application for an award of attorneys' fees and reimbursement of expenses should be approved; and (6) such other matters as this Court may deem appropriate.

For the reasons set forth in this Opinion, this Court shall grant final approval of the Settlement, the Plan of Allocation, and the application for an award of attorneys' fees and reimbursement of expenses.  This Court, however, shall limit the incentive award granted to Lead Plaintiff William Nasser, Jr. to $5250, which reflects reimbursement of expenses, and not

---

[1]  The term "Plaintiffs' Counsel" is used herein as defined in the Stipulation.  (Stipulation and Agreement of Settlement ("Stip.") 8.)

[2]  The terms "Released Parties" and "Settled Claims" are used herein as defined in the Stipulation.  (Stip. 8-9.)

$55,281.

# I. <u>APPROVAL OF SETTLEMENT</u>

Rule 23(e) of the Federal Rules of Civil Procedure requires courts to approve any

settlement of claims, issues or defenses that would bind class members.  Rule 23(e) provides in

relevant part:

> The claims, issues, or defenses of a certified class may be settled,
> voluntarily dismissed, or compromised only with the court's
> approval. . . .  The court must direct notice in a reasonable manner to
> all class members who would be bound by the proposal.  If the
> proposal would bind class members, the court may approve it only
> after a hearing and on finding that it is fair, reasonable, and adequate.
> The parties seeking approval must file a statement identifying any
> agreement made in connection with the proposal. . . . Any class
> member may object to the proposal if it requires court approval under
> this subdivision (e); the objection may be withdrawn only with the
> court's approval.

Rule 23 requires courts to "independently and objectively analyze the evidence and

circumstances before it in order to determine whether the settlement is in the best interest of

those whose claims will be extinguished."  <u>In re General Motors Corp. Pick-Up Truck Fuel Tank</u>

<u>Prod. Liab. Litig.</u>, 55 F.3d 768, 785 (3d Cir. 1995) (hereinafter referred to as "<u>GM</u>").  Under Rule

23(e), the district court acts as a fiduciary guarding the rights of absent class members, and must

determine whether the proffered settlement is "fair, reasonable, and adequate."  <u>In re Cendant</u>

<u>Corp. Litig.</u>, 264 F.3d 201, 231 (3d Cir. 2001) (citing <u>GM</u>, 55 F.3d at 785).  The "decision of

whether to approve a proposed settlement of a class action [or the like] is left to the sound

discretion of the district court."  <u>Girsh</u>, 521 F.2d at 156.

The Third Circuit "has adopted a nine-factor test to help district courts structure their

final decisions to approve settlements as fair, reasonable, and adequate as required by Rule 23."

3

GM, 55 F.3d at 785 (citing Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975)).  These factors, coined by courts as the "Girsh factors," include "(1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation."  Id.  "The proponents of the settlement bear the burden of proving that these factors weigh in favor of approval."  Id. at 785-86.

However, "[t]he Girsh factors do not provide an exhaustive list of factors to be considered when reviewing a proposed settlement."  In re AT&T Corp., 455 F.3d 160, 165 (3d Cir. 2006).  Other factors this Court may consider include:

> the maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

Id.

A proposed settlement is entitled to a presumption of fairness when "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of

the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004) (citing In re Cendant, 264 F.3d at 232 n.18).

This Court finds that the Settlement merits a presumption of fairness. Lead Plaintiffs attest that the Settlement was reached as a result of arm's length negotiations with experienced securities class action counsel. (Declaration of Neil Fraser in Support of Plaintiff's Motion for Final Approval of Settlement and the Approval of Plaintiff's Lead Counsel for an Award of Attorneys' Fees and Reimbursement of Expenses ("Fraser Decl.") ¶ 70.) The motion to dismiss resolved many of the issues raised in the Amended Complaint, leaving Lead Plaintiffs and Defendants (collectively, the "Parties") with a solid understanding of the strengths and weaknesses of their respective positions. (Id.) Moreover, only eight objections to the Settlement have been filed, a small percentage compared to the hundreds of potential members of the Settlement Class.[3]

After applying the Girsh factors to the instant case, this Court concludes that final approval of the Settlement is appropriate.

## A.      Complexity, Expense and Likely Duration

This action involves complex legal and factual issues, and pursuing them would be costly and expensive. (Id. ¶ 78.) Motion practice and/or trial would be lengthy and would require considerable attorney time. In addition, even after the litigation before this Court had concluded, the appellate process would have required additional time and expenses. (Id.) This Court finds

---

[3]   The term "Settlement Class" is used herein as the term "Class" is defined in the Stipulation. (Stip. 5.)

that continued litigation of this action would have been complex, expensive, and lengthy.

**B.        Reaction of the Class to the Settlement**

Counsel for Defendants has not filed any objection to the Settlement, although eight objections by individual shareholders have been brought to this Court's attention.  When weighed against the 68,500 Notices sent out to potential members of the Settlement Class, it is beyond dispute that the Settlement Class' reaction is favorable.  The substance of each objection is discussed seriatim.

1.        Summary of Objections

a.        *Elias Chotas*

Elias Chotas' ("Chotas") letter, dated February 11, 2008, states that he received a bulk mailing from the Claims Administrator, inferred by this Court to be the Notice, on February 4, 2008.  As a result, Chotas asserts that he was unable to return the Proof of Claim by the February 2, 2008 due date expressly stated in the Notice.  In a separate letter dated February 11, 2008, Chotas enclosed a copy of the Proof of Claim form that he returned, which is dated February 6, 2008, and which he alleges was postmarked and sent on February 11, 2008.

Chotas requests that this Court deny the attorneys' fees request, and "take appropriate disciplinary action" if it is determined that the mailing was delayed in order to benefit some Settlement Class members over others.  Chotas also requests that his Proof of Claim be deemed timely submitted.

b.        *Richard Dodge, Jr.*

In his letter dated February 8, 2008, Richard Dodge, Jr. ("Dodge") stated that the Notice mailed by the Claims Administrator was postmarked February 1, 2008, and that he received the

6

Notice on February 7, 2008.  This made it impossible for him to comply with its instructions to return the Proof of Claim by February 2, 2008.  Dodge states that the Claim Administrator[4] was negligent in its responsibility to distribute the Notice, and requests in general terms that corrective action be taken to remedy this error.

      c.    *Theodore A. Bechtold, Esq.*

Theodore A. Bechtold, Esq. ("Bechtold") wrote a letter, dated January 28, 2008, objecting to the Settlement on behalf of himself "and all absent Class members."  He states that he will provide a list of Settlement Class members for whom he is authorized to speak once the list is finalized; however, no such list ever materialized.  Bechtold also states in the letter that "[a]mong other things I object to the Lead plaintiffs used by the law firm of Milberg Weiss, the notice provided Class members, the limited disclosure Milberg Weiss provided regarding several partners business relationship with those behind GENTA and the obvious race to settle the case after the firm was indicted."

      d.    *Donald P. Alexander, Esq.*

Donald P. Alexander, Esq. ("Alexander") states in his letter, dated February 11, 2008, that he did not receive timely class notice.  He explains that the Notice sent to him, in his capacity as executor of an estate, was postmarked February 1, 2008, and that he received the Notice on February 5, 2008, after the February 2, 2008 deadline for returning the Proof of Claim had passed.  On February 6, 2008, Alexander notified Plaintiffs' Lead Counsel[5] of his untimely

---

[4]  The term "Claim Administrator" is used herein as defined in the Stipulation.  (Stip. 5.)

[5]  The term "Plaintiffs' Lead Counsel" is used herein as defined in the Stipulation.  (Stip. 8.)

receipt of Notice.

      e.     *Joseph T. Caravello*

Joseph Caravello complains in a letter dated January 12, 2008 that he will recover less than what he actually lost if the terms of the Settlement are effectuated.  He explains that, under the terms of the Settlement, the Settlement Class may recover 16.9 cents and 0.0245 shares of Genta common stock for each damaged share of Genta stock they own. Under this formula, Joseph Caravello states, he will recover a few hundred dollars.  However, Joseph Caravello claims that he lost over $32,000 due to purchases of Genta common stock during the Class Period, and stands to lose thousands more when he sells the remaining shares he holds.

      f.     *Lisa B. Caravello*

In a separate letter akin to that sent by Joseph Caravello, dated January 13, 2008, Lisa Caravello states that she will recover less than what she actually lost if the terms of the Settlement are effectuated.  Specifically, Lisa Caravello states that she may recover fifty dollars under the Settlement, but has lost thousands of dollars due to purchases of Genta common stock during the Class Period.

      g.     *David and Nancy Pudelsky*

David and Nancy Pudelsky (the "Pudelskys") object to the dates incorporated into the Class Period.[6]  In a letter dated January 26, 2008, they contend that they lost a considerable amount of money on Genta stock that they purchased prior to December 14, 2000, and which was sold after May 3, 2004.

---

   [6]  The term "Class Period" is used herein as defined in the Stipulation.  (Stip. 6.)

h.    *Geoff Gordon*[7]

In a letter dated February 26, 2008, Geoff Gordon ("Gordon") states that the Settlement will be "unfairly distributed" because individuals who qualify as members of the Settlement Class may have taken certain actions that allowed them to gain a profit from Genta common stock acquired or sold during the Class Period.  To defend his assertion, Gordon offers the following hypothetical in his letter:

> One has by all intents, and filing literally by forms asked only, held shares in Genta from Dec[ember] 2000 and held them all through the [C]lass [P]eriod ending in 2004.  Well in the literal sense of the intent of the filing, they are entitled to a loss of $9 buy or so against $5 sell or so . .[ .] or about $4 a share. . . . However, if along the way that same person wrote covered Calls against their $9 shares all the way down to the $5 "sell" at the end of the Class period . . . they in fact were very much in the profit net column, or at least square.  Same would be true if they bought Put protection or locked in gains with a Short off-set box position.  Yet these off-set profit positions that reasonably would occur during the [C]lass [P]eriod were not asked to be accounted.

2.    Analysis of Objections

The objections raised by the objecting shareholders noted above are meritless.

Bechtold's objections should not be taken into consideration because he submitted no information identifying any potential members of the Settlement Class on whose behalf he was speaking.  Indeed, Bechtold admitted at the Fairness Hearing that he has no standing to raise objections against the Settlement.  (Fairness Hr'g T27:3-13.)  Consequently, this Court shall not take into account Bechtold's objections.

The Pudelskys' objection lacks merit.  The Amended Complaint states that the materially

---

[7] Although Geoff Gordon's letter was addressed to this Court, this Court did not receive the letter until it was submitted by Plaintiffs' Lead Counsel at the Fairness Hearing.

false and misleading statements allegedly made by Defendants caused damage to Genta stock during the Class Period.  (Am. Compl. ¶¶ 29-36, 41-43.)  To allow potential Settlement Class members to recover for losses incurred from a decline in Genta stock prices outside of the Class Period would fly in the face of the injury alleged in the Amended Complaint.  Furthermore, the Class Period described in the Settlement represents a reasonable compromise since the Class Period named in the Amended Complaint may not have been maintained throughout the litigation of this action.  Had the litigation continued, Defendants likely would have attacked Lead Plaintiffs on the length of the Class Period set forth in the Settlement.  (T9:3-8.)

The arguments raised by Joseph and Lisa Caravello in their objections are also flawed. Lead Plaintiffs stated that "Genta is a company that, by its own admission, has not turned a profit." (Fairness Hr'g T9:11-12.)  It may have been difficult to extract an agreement from Genta to pay more than what is provided for in the Settlement.  (Fairness Hr'g T9:20-25; T10:1.)  If Lead Plaintiffs had sought a larger monetary award, moreover, Defendants could have "start[ed] spending insurance money" that Lead Plaintiffs were already seeking, thereby resulting in "more of a diminution in the recovery rather than a larger recovery."  (Fairness Hr'g T10:2-7.)

Furthermore, the Settlement is not intended to compensate each and every aggrieved individual fully for his loss, but instead represents a reasonable amount of relief for the Settlement Class, given the risks inherent in further litigation.  The Notice expressly states that it is unlikely that the members of the Settlement Class will receive payment satisfying all losses incurred from their recognized claims.  (Notice, attached as Ex. A-1 to Lead Pl. Stipulation, at 9.) In addition, each individual receiving the Notice has the right to exclude himself from the Settlement and retain any right he may have to sue Defendants on his own.  (Id. at 10.)

10

Gordon's objection is unfounded.  There is no evidence in the record to show that members of the Settlement Class may enjoy a windfall under the terms of this Settlement. Plaintiffs' Lead Counsel addressed Gordon's concerns in an email correspondence which explains that the Claims Administrator can identify and rectify any problems with the distribution of the Settlement.  (T12:14-25.)  Gordon offers only a hypothetical, and no concrete evidence, claiming that potential members of the Settlement Class *may* receive funds from the Settlement despite never having incurred a loss from Genta common stock, call options on Genta common stock, or put options on Genta common stock.  Without more, this Court cannot conclude that any potential members of the Settlement Class will be unjustly enriched by the Settlement.

Last, Lead Plaintiffs have explained quite effectively the aberration in the service of Notice to Chotas, Dodge, and Alexander.  Plaintiffs' Lead Counsel states that the Notice was properly disseminated by the Claims Administrator.  This Court's Order dated November 5, 2007 (the "November 5 Order") provides that the Notice and Proof of Claim must be mailed by first class mail, postage prepaid, within thirty days.  The Notice was distributed to potential Class Members on November 27, 2007.  (Aff. of Jose C. Fraga, attached as Ex. H to Fraser Decl., at ¶¶ 4-5.)

To explain Dodge's late receipt of the Notice, Lead Plaintiffs state that Notice was timely mailed to him, and that it was later returned as undeliverable on January 22, 2008.  (Fraser Decl. ¶ 99.)  All such undeliverable mailings were sent through a national change of address database, and then re-mailed to the updated address.  (Id.)  Plaintiffs' Lead Counsel contacted Dodge and directed him to attach an explanatory note to the Proof of Claim before submitting it to the Claims Administrator.  (Id.)

11

Plaintiffs' Lead Counsel contacted Chotas as well.  Chotas learned from Plaintiff's Lead Counsel that he likely received the Notice after the February 2, 2008 deadline due to the failure of a Nominee[8] to dispatch the Notice, as required by the November 5 Order.  (Id. ¶ 101.)  Chotas was also advised to submit his Proof of Claim together with an explanatory note.  (Id.)

Alexander's objection was not included on the docket list; nevertheless, his February 11, 2008 letter (received in chambers on February 14, 2008) indicates that he notified Plaintiffs' Lead Counsel of his untimely receipt of Notice.  At the Fairness Hearing, Plaintiffs' Lead Counsel attested to this Court that Alexander was given the same information that Chotas and Dodge were told.  (Fairness Hr'g T30:14-25; T31:1-4.)

**C.      Stage of the Proceeding and the Amount of Discovery Completed**

This action had developed sufficiently to allow the Parties to discern the strengths and weaknesses of their respective positions.  This case was initiated on May 4, 2004.  The Parties did not reach a settlement until after the case had progressed through the filing and resolution of a motion to dismiss, the production of certain documents, and several mediation sessions. (Fraser Decl. ¶ 102.)

Lead Plaintiffs attest that the impending discovery would have been extremely expensive and time-consuming to complete.  (Fairness Hr'g T7:6-15; T16:21-25; T17:1-2.)  The cost of

---

[8]  Nominee purchasers are described within the Notice as individuals and entities such as brokerage firms who purchased Genta common stock and call options on Genta common stock or who sold (wrote) put options on Genta common stock during the Class Period (as defined in the Stipulation) as record owners, but not as beneficial owners.  (Stip. Ex. A-1 at 26.)  The November 5 Order requires Nominee purchasers to, within seven days of their receipt of the Notice, either forward copies of the Notice and Proof of Claim to their beneficial owners or provide the Claims Administrator with lists of the names and addresses of the beneficial owners to which the Claims Administrator will promptly send the Notice and Proof of Claim.

collecting the data alone would have cost Defendants approximately six or seven million dollars. (Fairness Hr'g T20:20-24.)  The scientific data would have been difficult to decipher, and the contract attorneys needed to review the documents would have been expensive and difficult to find.  (Id.)

This is not to say that the Parties have not engaged in discovery sufficient to discern the relative strength of their arguments.  Significant document discovery had already been undertaken and produced.  (Fairness Hr'g T7:16-19.)  Although discovery has been halted since January 23, 2006, the Parties' obligation to respond to document requests and subpoenas related to the mediation continued.  (Order dated Jan. 23, 2006.)

D.      **Risks of Establishing Liability and Damages**

Girsh factors four and five require this Court to consider the risks involved in establishing liability against Defendants, as well as the amount of damages due.  The Settlement terms do not include any admission of liability by Defendants.  (Id. ¶¶ 104-05.)  Defendants have denied, and continue to deny, each and every allegation made by Lead Plaintiffs, including whether their conduct caused the decrease in Genta stock prices.  Defendants also contest any claims which seek to hold them liable for any wrongdoing.  (Id. ¶¶ 104-07.)  Also, Defendants certainly would have attacked the materiality of the statements made by Genta that Plaintiffs rely on here. (Fairness Hr'g T18:5-9.)  In addition, competing expert testimony likely would have created sufficient uncertainty regarding the exact amount of damages that could be recovered.  (Id. ¶ 109.)  Defendants also would have attacked the length of the Class Period set forth in the Settlement.  (Fairness Hr'g T6:1-7.)  Last, if the litigation had proceeded, Defendants would have sought to confirm a Class Period markedly shorter than that provided for in the Settlement.  (Id.)

**E.**     <u>Risks of Maintaining the Class Action Through Trial</u>

The sixth <u>Girsh</u> factor requires consideration of the risks implicit in maintaining the class

action status of the case throughout trial.  Lead Plaintiffs profess that they have become

"conversant" with the strengths and weaknesses of this case, and thus have fairly evaluated the

risks associated with continued litigation.  (<u>Id.</u> ¶¶ 110-12.)  They note that this Court, after

considering Defendants' arguments, may not have certified the Settlement Class, and that, even if

the Settlement Class was certified, this Court could order de-certification at any point during the

litigation.  The existence of this risk encouraged Settlement of this action. (<u>Id.</u>)

Lead Plaintiffs also assert that Defendants likely would have attacked the appropriateness

of the proposed class representatives during the class certification stage of the litigation.

(Fairness Hr'g T5:20-25.)  In particular, Lead Plaintiffs attest that the "typicality" prong of the

class certification analysis would have been a focal point of Defendants' argument.  (<u>Id.</u>)  The

definition of the Settlement Class, consequently, may have taken a form distinct from that

provided for in the Settlement.

**F.**     <u>Ability of the Defendants to Withstand Greater Judgment, Range of Reasonableness
In Light of the Best Possible Recovery, and Range of Reasonableness in Light of the
Attendant Risks of Litigation</u>

The final three <u>Girsh</u> factors take into account Defendants' ability to withstand a greater

judgment, the reasonableness of the settlement in light of the best possible recovery available,

and the reasonableness of the settlement in light of the attendant risks of litigation.  As stated

above, the Settlement comprises a reasonable resolution of the action, after taking into account

the inherent risks at stake in securities litigation.  The Settlement was negotiated at arm's length

by experienced class counsel, and Genta does not "really have any resources that they would

14

have been willing to give up other than what [Lead Plaintiffs] have already been able to obtain."

(Fairness Hr'g T9:24-25; T10:1.)

**G.**   **Summary**

After considering the aforementioned Girsh factors, this Court concludes that the

Settlement is fair and reasonable, and merits final approval by this Court.

## II.  APPROVAL OF PLAN OF ALLOCATION

Lead Plaintiffs also ask this Court to grant final approval of the Plan of Allocation, as set

forth in the Notice.  In the November 5 Order, this Court, after examining the Plan of Allocation

against the Girsh factors, determined that approval of the Plan of Allocation was warranted.

(November 5 Order at 3-4.)  No objection to the Plan of Allocation has been filed with this

Court.  This Court shall accordingly approve of the Plan of Allocation, for the reasons set forth in

the November 5 Order.

## III.  APPROVAL OF APPLICATION FOR ATTORNEYS' FEES

Lead Plaintiffs request approval of its proposed attorneys' fees award, which includes

$4.5 million in cash and 500,000 shares of Genta common stock for Plaintiffs' Counsel, as well

as a request for reimbursement of expenses.  "Attorney's fees are typically assessed through [use

of] the percentage-of-the-fund method or through the lodestar method."  In re AT&T Corp., 455

F.3d at 164.  "The amount of a fee award . . . is within the district court's discretion so long as it

employs correct standards and procedures and makes findings of fact not clearly erroneous."  In

re AT&T Corp., 455 F.3d at 163-64 (quoting Pub. Interest Research Group of N.J., Inc. v.

Windall, 51 F.3d 1179, 1184 (3d Cir. 1995)).  District courts must clearly set forth their

reasoning for fee awards so that, if appealed, the Court of Appeals will have a sufficient basis to

review for abuse of discretion.  Id. at 164.

"The percentage-of-recovery method is generally favored in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'"  In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005) (quoting In re Prudential Ins. Co. of Am., 148 F.3d 283, 333 (3d Cir. 1998)).  The Third Circuit has recommended that district courts cross-check the reasonableness of the result yielded under the percentage-of-recovery method by also applying the lodestar method.  In re AT&T Corp., 455 F.3d at 164.  However, "[t]he lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method."  Id.  This Court shall analyze the reasonableness of the attorneys' fees requested under both methods.[9]

## A.    The Percentage-Of-Recovery Method

Seven factors are considered when determining the propriety of an attorneys' fees award:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

Id. at 165.  Much like the Girsh factors, these factors do not constitute an exhaustive list.  Id.  The Third Circuit has noted three additional factors that may also be considered when analyzing the

---

[9]  It is important to note that "[b]oth of these approaches have been subject to significant criticism. . . . [because] each leaves the court to make a fee determination with little concrete guidance. . . . Courts are dependent upon counsel for information about the quality and quantity of the attorneys' work, and must make their judgments of the appropriate lodestar multiple or percentage of recovery after the fact and on the basis of imperfect information."  In re Cendant Corp., 404 F.3d at 188.

propriety of an attorneys' fees award, namely (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any "innovative" terms of settlement.  Id. (citing In re Prudential, 148 F.3d at 338-40).  Although the analysis of the aforementioned seven factors may somewhat overlap with the factors considered under the Girsh test to examine the appropriateness of the Settlement, this Court will nonetheless discuss each factor in turn.

      1.    Size of the fund and number of persons benefitted

"As a general rule, as the size of a fund increases, the appropriate percentage to be awarded to counsel decreases."  In re Cendant Corp. Sec. Litig., 232 F. Supp. 2d 327, 337 (D.N.J. 2002).  This rule is based on the premise that, "in many instances[,] the increase in recovery is merely a factor of the size of the class and has no direct relationship to the efforts of counsel." Id. (quoting In re Prudential, 148 F.3d at 339).  However, "there is no rule that a district court must apply a declining percentage reduction in every settlement involving a sizable fund.  Put simply, the declining percentage concept does not trump the fact-intensive Prudential/Gunter [seven-factor] analysis."  In re Rite Aid, 396 F.3d at 303.  Indeed, the Third Circuit cautions against "overly formulaic" approaches to calculating the reasonableness of an award for attorneys' fees.  Id.  Parenthetically, the Third Circuit has noted that other courts have criticized the decreasing percentage principle.  Id. at 303 n.12.

Counsel for Plaintiffs note that the Settlement provides for a substantial recovery – $18 million in cash, plus interest, and two million shares of Genta common stock.  (Memorandum of

Law in Support of Plaintiffs' Lead Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses from the Settlement Fund ("Attorneys' Fees Br.") 5.)  While not constituting a "very large settlement," the Settlement is no doubt considerable in size.  See In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 737 n.19 (3d Cir. 2001) (recognizing $100,000,000 as the marker of a very large settlement).  Furthermore, the Settlement Class may comprise hundreds of individuals that may have purchased or acquired Genta's publicly traded common stock.  (November 5 Order at 5.)  These considerations weigh in favor of approving the attorneys' fees award.

       2.       Presence or absence of substantial objections

Of the hundreds of potential members of the Settlement Class, only eight submitted objections, and of these eight, only one objected to the attorneys' fees award.  However, as explained *supra* in Section I, B of this Opinion, Chotas' objection to the untimely distribution of the Notice does not warrant denial of the request for attorneys' fees because Chotas' late receipt of the Notice was an anomaly due to the failure of a Nominee to timely distribute the Notice as required by the November 5 Order.  The lack of meritorious objections in this action favors awarding the requested attorneys' fees.

       3.       Skill and efficiency of attorneys involved

The third factor, the skill and efficiency of the attorneys, weighs in favor of granting the attorneys' fees award.  The attorneys involved in this action are experienced in, and adept at, handling securities litigation.  (Fraser Decl. ¶¶ 128-29.)  Given the "stated goal in percentage fee-award cases of ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation," the attorneys' expertise in securities litigation favors approving

the requested award for attorneys' fees.  <u>Gunter v. Ridgewood Energy Corp.</u>, 223 F.3d 190, 198

(3d Cir. 2000).

     4.    <u>Complexity and duration of litigation</u>

As explained *supra* in Section I, A of this Opinion, the instant action involves complex

legal and factual issues, and would have been costly and expensive, if litigated further.  <u>See</u>

<u>Smith v. Dominion Bridge Corp.</u>, No. 96-7580, 2007 WL 1101272, at *4 (E.D. Pa. Apr. 11,

2007) ("There is no doubt that the issues in this case are complex in that the alleged

misrepresentations relate to securities fraud which would have required a significant amount of

expert testimony and would involve educating a jury about financial accounting and federal

securities law.").  Even if Lead Plaintiffs were successful on the merits, they would have faced

challenges proving the amount of damages owed to the Settlement Class.  (<u>Id.</u>)  The complexity

of the issues involved in this case support approval of the attorneys' fees award.

     5.    <u>Risk of nonpayment</u>

Plaintiffs' Counsel litigated this action on a contingent fee basis, and thus faced

considerable risk that they would not receive payment for their work.  (Fraser Decl. ¶ 134.)  The

contingent fee agreement further substantiates the propriety of the attorneys' fees award.  <u>See In</u>

<u>re Datatec Sys., Inc. Sec. Litig.</u>, No. 04-525, 2007 WL 4225828, at *7 (D.N.J. Nov. 28, 2007); <u>In</u>

<u>re Lucent Tech., Inc. Sec. Litig.</u>, 327 F. Supp. 2d 426, 438 (D.N.J. 2004).

     6.    <u>Amount of time devoted to case by counsel for Lead Plaintiffs</u>

Plaintiffs' Counsel have devoted over 2850 hours to this case, and expect to devote more

time going forward when administering the Settlement. (Fraser Decl. ¶ 132.)  This fact, together

with the attendant risk that Plaintiffs' Counsel may not have otherwise received compensation,

favors approving the fee request.

       7.    <u>Awards in similar cases</u>

It is not uncommon for attorneys to receive twenty-five percent of the settlement funds. <u>See</u> <u>In re Rite Aid Corp. Sec. Litig.</u>, 362 F. Supp. 2d 587, 590 (E.D. Pa. 2005); <u>In re Rent-Way Sec. Litig.</u>, 305 F. Supp. 2d 491, 514 (W.D. Pa. 2003). Moreover, attorneys have received both cash and stock awards as part of their attorneys' fees award. <u>See</u> <u>In re Cell Pathways, Inc. Sec. Litig. II</u>, No. 01-1189, 2002 WL 31528573, at *15 (E.D. Pa. Sept. 23, 2002) (awarding plaintiffs' counsel thirty percent of the settlement fund, including both the settlement cash and the settlement stock). The attorneys' fees requested in this action do not depart from those requested in other similar class actions.

**B.**    **<u>The Lodestar Method</u>**

"The lodestar method multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services, based on the given geographical area, the nature of the services provided, and the experience of the attorneys." <u>In re Rite Aid Corp.</u>, 396 F.3d at 305. "The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." <u>Id.</u> at 305-06. To perform the cross-check, district courts must divide the proposed fee award by the lodestar calculation, which will yield a lodestar multiplier. <u>In re AT&T Corp.</u>, 455 F.3d at 164.

To calculate the lodestar amount, this Court reviewed the billing summaries provided by Plaintiffs' Counsel. (Fraser Decl. Ex. A-F.) After adding together the hours of work performed by Plaintiffs' Counsel, and multiplying this total by the average hourly rate charged, this Court calculated a lodestar of $1,016,673.0225 for all attorneys participating in the case, and

$257,092.9525 for all professional support staff, yielding a total lodestar amount of $1,273,765.975.[10]

To compute the lodestar multiplier, this Court must divide the requested attorneys' fees award by the lodestar amount.  According to Plaintiffs' Lead Counsel, only the cash award of $4,500,000 should be divided by the lodestar amount.  However, this calculation does not take into account the 500,000 shares of Genta common stock requested by Plaintiffs' Counsel. Plaintiffs' Lead Counsel states that the lodestar multiplier does not factor in the value of the Settlement Shares because their value will not be known until they are issued.  (Fraser Decl. ¶ 138 n.16.)  However, the failure to include any estimate of the Settlement Shares' value underestimates the true size of the attorneys' fees award.

Plaintiffs' Lead Counsel states that "Genta common stock was recently trading at $0.48 per share."  (Id.)  Using this indicator, the Settlement Shares would be valued at $240,000. When combined with the $4,500,000 cash award, the total value of the attorneys' fees award amounts to $4,740,000.  This total, when divided by the $1,273,765.975 lodestar amount calculated by this Court, yields a lodestar multiplier of 3.72.[11]  This lodestar multiplier falls within the range approved for reasonable attorneys' fees awards.  See In re Prudential, 148 F.3d at 341 (stating that "multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied").

---

[10]  Plaintiffs' Lead Counsel states that the lodestar amount is $1,200,611.88. (Memorandum of Law In Support Of Plaintiffs' Lead Counsel's Application For An Award Of Attorneys' Fees And Reimbursement Of Expenses From The Settlement Fund ("Attorneys' Fees Br.") 18; Fraser Decl. ¶ 137.)

[11]  Plaintiffs' Lead Counsel contends that the lodestar multiplier is 3.75.  (Attorneys' Fees Br. 18-19; Fraser Decl. ¶ 139.)

In sum, both the percentage-of-the-fund method and the lodestar method support approval of the attorneys' fees award requested by Plaintiffs' Counsel.  An attorneys' fees award amounting to twenty-five percent of the Settlement Fund shall be approved.

## IV.  <u>REIMBURSEMENT OF EXPENSES TO PLAINTIFFS' COUNSEL</u>

Plaintiffs' Counsel also request reimbursement of expenses incurred as part of this action, totaling $130,195.29.  The Third Circuit has approved of reimbursing expenses, in addition to awarding attorneys' fees.  <u>See</u> <u>In re AT&T Corp.</u>, 455 F.3d at 169 (upholding district court's order supporting reimbursement of expenses totaling over $5 million).  This Court finds that the expenses set forth in Exhibits B through F of the Fraser Declaration, which encompass costs for legal research, meals, photocopying, experts, and mail postage, are in fact reasonable and appropriate, and thus shall be reimbursed to Plaintiffs' Counsel.

## V.  <u>REIMBURSEMENT OF EXPENSES TO LEAD PLAINTIFF</u>

Last, Lead Plaintiffs ask this Court to award $55,281[12] to Lead Plaintiff William Nasser, Jr. ("Nasser") as reimbursement for costs and expenses incurred from his service as a class representative for this case.  The Private Securities Litigation Reform Act (the "PSLRA") states that a class representative shall "not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4)."  15 U.S.C. § 78u-4(a)(2)(A)(vi).  Paragraph (4) provides that

> [t]he share of any final judgment or of any settlement that is awarded

---

[12]  Lead Plaintiffs originally stated that Nasser incurred $66,531 in costs and expenses for work performed in relation to this action.  This total was amended at the Fairness Hearing, after this Court pointed out an error in Lead Plaintiffs' calculations.

> to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class.

15 U.S.C. § 78u-4(a)(4).

Plaintiffs' Counsel state that Nasser incurred costs and expenses totaling $55,281 for performing duties related to this action, including reviewing drafts of complaints, retrieving and reviewing brokerage records, participating in telephone conferences, and traveling to and attending meetings.  (Decl. of William Nasser, Jr., attached as Ex. G to Fraser Decl., at ¶¶ 2-4.) Plaintiff incurred $1671 in travel expenses, $231.05 in fax and photocopy expenses, and $3,347.95 in telephone costs.  (Id. at ¶¶ 3-4.)  The remaining costs are based on 222.36 hours spent performing the aforementioned tasks, multiplied by Nasser's discounted billing rate of $225 per hour.[13]

This Court accepts Nasser's assertion that he incurred $5250 in costs from travel expenses, fax and photocopy expenses, and telephone charges.  However, Nasser has not submitted any evidence showing that he lost wages or business opportunities due to the time he spent working on the instant litigation.  Although Nasser estimated that he spent 222.36 hours performing duties related to this action, and established his discounted billing rate as $225 per hour, Nasser has failed to show that his contributions to this action foreclosed him from obtaining business opportunities or earning wages.  See Dominion Bridge Corp., 2007 WL

---

[13]  Nasser's discounted billing rate was computed based on the rate he charges for standard litigation support for his work as a certified public accountant at an accounting and litigation firm, for which he is the managing partner and owner.

1101272, at *12 (denying class representative's request for incentive award because the "class representative failed to provide this court with any evidence of actual expenses incurred, lost wages, lost vacation time, or lost business opportunities"); In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., Nos. 02-1484, 02-3176, 02-7854, 02-10021, 2007 WL 313474, at *25 (S.D.N.Y. Feb. 1, 2007) ("Although Manton claims to have spent time during her work day performing her duties as lead plaintiff, she nevertheless fails to claim any actual expenses incurred, or wages or business opportunities she lost, as a result of acting as lead plaintiff. Under the PLRSA, it is simply not enough . . . to assert that she took time out of her work day and that her time is conservatively valued at $500 per hour.")

After calculating the aforementioned expenses, this Court finds that Nasser should be granted an incentive award of $5250 for costs and expenses incurred during the litigation of this action.

## VI. <u>CONCLUSION</u>

For the reasons set forth above, Lead Plaintiff's Motion for Final Approval of the Settlement shall be granted.  This Court approves both the Settlement and the Plan of Allocation.

However, the Motion By Plaintiffs' Counsel for Award of Attorneys' Fees and Reimbursement of Expenses shall be granted, in part, and denied, in part.  This Court approves the proposed attorneys' fees award entitling Plaintiffs' Counsel to $4.5 million in cash and 500,000 shares of Genta common stock, as well as $130,195.29 for reimbursement of expenses. However, this Court shall only grant an incentive award of $5250 to Nasser.


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date: May 27, 2008

25